UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BRIAN E. COLE,

    Plaintiff,

v

SONYA R. JACOBS, in her individual capacity, and RICHARD S. HOLCOMB, in his individual and official capacities

    Defendants.

Case No.
Hon:

James K. Fett (P39461)
Fett & Fields, P.C.
407 N. Main St., 2nd Floor
Ann Arbor, MI  48104
734-954-0100
Fax: 734-954-0762
jim@fettlaw.com
Attorneys for Plaintiff

# PLAINTIFF'S COMPLAINT AND JURY DEMAND

Plaintiff, through counsel, Fett & Fields, P.C., states the following claim against Defendants:

## NATURE OF CLAIM

1. This is a 42 U.S.C. §1983 action brought for race and sex discrimination in violation of the Equal Protection Clause of the Fourteenth Amendment.

## JURISDICTION AND PARTIES

2. Plaintiff invokes the jurisdiction of this Court pursuant to 28 U.S.C. §1331.

3. The events giving rise to this cause of action occurred in the Eastern District of Michigan.

4. The amount in controversy exceeds $75,000.00, exclusive of interest, costs and attorney fees.

5. Plaintiff Brian E. Cole ("Plaintiff") is a Michigan resident, and the Interim Director of Integrated Talent Systems and Employee Experience in the Department of Organizational Learning/Workplace Culture & Experience (the "Department") at University of Michigan Medicine.

6. Plaintiff's supervisor was Defendant Sonya R. Jacobs, a Black female, when she was the Chief Organizational Learning Officer and Special Advisor to the President.

7. She is sued in her individual capacity for money damages.

8. Jacobs reported to Defendant Richard S. Holcomb, Chief Human Resources Officer and Associate Vice President of Human Resources at the University of Michigan.

9. Holcomb is sued in his individual capacity for money damages and in his official capacity for equitable and declaratory relief.

## FACTS

10. Plaintiff is a White male, age 52.

11. He began his employment with the University of Michigan on January 6, 2016.

12. Plaintiff had significant private sector experience in his field before joining the University of Michigan.

13. Plaintiff is an exemplary employee and has received stellar performance reviews throughout his employment with the University of Michigan.

14. Nonetheless, he watched as the University of Michigan and these defendants passed him over for promotion because of his status as a White male.

15. In January of 2021, Jacobs and Holcomb began creating a succession plan for the department in anticipation of Jacobs's retirement.

16. Jacobs retired from her role in the Department on July 5, 2025.

17. Part of the succession plan required filling the Senior Director position, which in February 2025 would be titled "Associate Vice President of Enterprise Learning and Development" ("AVP").[1]

18. Jacobs was vocal in her belief that race and sex should be a primary factor in employment decisions at the University of Michigan.

---

[1] Who comes up with these grandiose titles?

19. Indeed, Jacobs has stated on numerous occasions that, as a Black woman, she would like to see more "underrepresented minorities" in leadership positions.

20. It is not surprising then that 20 of the 23 employees in the Department are biologically female, including 7 non-White employees and only 2 other White males.

21. Nonetheless, because he was the most qualified candidate in the department and they valued his contributions (he made them look good), Defendants led Plaintiff to believe that he would be promoted to the Senior Director position.

22. They told him that he was "part of the succession plan," "would have an expanded role," and encouraged to take on additional responsibilities in preparation for assuming the Senior Director position.

23. However, unbeknownst to Plaintiff, Jacobs and Holcomb were secretly grooming Carol Lee, an Asian female for the role.

24. Lee is vastly underqualified compared to Plaintiff.

25. When the grooming began Lee was a Staff Specialist, several levels below Plaintiff's position.

26. Yet Defendants removed Plaintiff from the Senior Leadership Team ("SLT") and added Lee.

27. Over the course of one year, Defendants promoted Lee directly from Staff Specialist to Director and then Interim Senior Director even though she had never served as a Supervisor, Manager, Assistant Director or Associate Director.

28. Defendants took the unprecedented step of progressing Lee directly to Interim Director so that she would be eligible to fill the Senior Director position and they could promote her to that position instead of the White male Plaintiff.

29. Throughout this time, Defendants cynically continued to encourage in Plaintiff the expectation that he would be promoted to the Senior Director position.

30. Indeed, Jacobs discussed this expectation at least ten times with Plaintiff during this period.

31. In one of these discussions, on October 16, 2023, Plaintiff asked Jacobs whether she had any concerns about promoting a "middle-aged White male" as her successor.

32. Jacobs smiled but did not reply.

33. Plaintiff continually asked Jacobs when the position would be posted, as required by university policy.

34. Jacobs never gave Plaintiff a direct or definitive answer.

35. In April of 2024, Defendants decided to re-label the Senior Director position as an "interim" position, thereby bypassing the job posting requirement.

36. On April 29, 2024, Defendants appointed Lee as the Interim Senior Director.

37. On information and belief, Defendants intended to remove the interim title once Lee has obtained enough experience in the role.

38. In her role as Interim Senior Director, Lee earned approximately $36,000.00 more per year in salary and gained valuable experience and credentials which will serve her well in the future

39. Defendants manipulation of the hiring process had the desired effect of excluding Plaintiff from consideration for the Interim Senior Director position so that they could appoint Lee Interim, and later permanent, Senior Director.

40. Defendants did so because, consistent with the University's much vaunted Diversity Equity and Inclusion ("DEI") program, they did not want to promote a White male to the Senior Director position.

41. Unfortunately for Defendants, they had to remove Lee as Interim Director because her performance in the position was, to be kind, substandard.

42. Defendants then posted the Senior Director position, titling it "Associate Vice President of Enterprise Learning and Development" (AVP"), interviewed candidates, including Plaintiff, Lee and others, and on information and belief, was prepared to offer the position to an internal Black Male candidate.

43. Because of the Trump administration's efforts to dismantle illegal DEI programs in academia, Defendants and the University withdrew the AVP posting and to date have not filled the position as they are waiting for a more opportune time to appoint a diversity candidate to the position.

## COUNT I
## RACE AND GENDER DISCRIMINATION
## (42 U.S.C. §1983 FOURTEENTH AMENDMENT)

44. Plaintiff incorporates by reference the preceding paragraphs.

45. Plaintiff is a White male.

46. At all times Plaintiff was a high performing employee.

47. Defendants refused to appoint Plaintiff to the *Interim* Senior Director/AVP position because of his status as a White male and appointment of a White male would have been inconsistent with its DEI mission and storied history of considering race and gender in hiring (and other) decisions to the detriment of White males and to the benefit of minorities and females.

48. Defendants refused to appoint Plaintiff to, and refused to fill, the *permanent* Senior Director/AVP position for the same reasons, hoping for a more opportune time in the future to appoint a diversity candidate (i.e. non-White male).

49. Defendants' discriminatory motives are evident from its manipulation of the appointment process, its pattern and practice of flouting state and federal law, including the federal and Michigan Constitutions, and the disparity in qualifications

7

between Plaintiff and Lee, which is "so apparent as to virtually jump off the page and slap you in the face." See *Ash v. Tyson Foods, Inc.*, 546 U.S. 454, 456 (2006).

50. Defendants' actions under the color of state law thus deprived Plaintiff of his right to equal protection under the Fourteenth Amendment.

51. As a proximate result of Defendants' unlawful conduct as described above, Plaintiff has sustained, and will continue to sustain, injuries, and damages, including but not limited to, loss of earnings and earning capacity; loss of career opportunity; humiliation, outrage, embarrassment, mental and emotional distress and the physical manifestations of those injuries.

WHEREFORE Plaintiff requests that this Court enter judgment against Defendants *in their individual capacities* for (a) Economic damages; (b) Compensatory damages to compensate for the mental and emotional distress, outrage, and humiliation he has suffered, and continues to suffer, as a result of Defendants' illegal actions; (c) Costs, interest and reasonable attorney fees and against Holcomb *in his official capacity* for such other equitable and declaratory relief as the Court deems just.

Respectfully submitted,

*/s/ James K. Fett*
By: James K. Fett (P39461)
Fett & Fields, P.C.
407 North Main Street, 2nd Floor

|  |  |
|---|---|
|  | Ann Arbor, MI 48104 |
|  | 734-954-0100 |
|  | jim@fettlaw.com |
| Dated: June 17, 2025 | Attorneys for Plaintiff |

## JURY DEMAND

Plaintiff, through counsel, demands trial by jury.

|  |  |
|---|---|
|  | Respectfully submitted, |
|  | */s/ James K. Fett* |
|  | By: James K. Fett (P39461) |
|  | Fett & Fields, P.C. |
|  | 407 North Main Street, 2nd Floor |
|  | Ann Arbor, MI 48104 |
|  | 734-954-0100 |
|  | jim@fettlaw.com |
| Dated: June 17, 2025 | Attorneys for Plaintiff |

9